*90 N. J. Eq.*     Grassman *v.* Badgley.

---

EDWARD J. GRASSMAN et al.

*v.*

SAMUEL S. BADGLEY et al.

[Decided August 5th, 1919.]

1. The right of the court of chancery to partition property in this state does not depend upon statute.

2. Where it appears that complainant and others, parties to the suit, derive title through a will made in 1836, probated in 1844, of lands, which are vacant salt meadow, not subject to be taken possession of in the ordinary method, and it not appearing that there are any adverse claimants, the parties having color of title, and there being nothing to prevent actual entry, the rights of the parties may be partitioned in equity.

3. The general rule that, before a court of equity will decree partition, proof of title must be made which would *prima facie* entitle parties applying to a verdict in ejectment does not apply in all cases.

On bill. On exceptions to master's report.

*Messrs. Day, Day, Smith & Slingerland,* for the exceptant.

LANE, V. C.

This is a partition suit in which the master has reported that it has not been proven before him that complainant has title to any part of the lands and premises referred to in the bill, and that the description of the property in the bill is too indefinite. The premises sought to be partitioned are vacant salt meadow lands in the city of Elizabeth, described in the bill of complaint as a tract or parcel of land and premises situate, lying and being in the city of Elizabeth, county of Union and State of New Jersey, being a tract of salt meadow containing six acres, more or less, and lying and being in the Elizabeth Town great meadows and adjoining meadows of Aaron Bryant and others. The history of the title is as follows: Samuel Badgley died in 1844 leaving a last will and testament duly probated, and by such will, which was made in 1836, he devised to his son Henry "the one equal one-half part of a lot of salt meadow I now own near Elizabeth Town containing in all about six acres," and to his son Jacob the other equal half part of a lot of salt meadow. By deed dated April 1st, 1845, a daughter of Henry conveyed, what is stated in the deed to be one undivided sixth part of several tracts of land in the townships of Springfield, New Providence and Westfield, in the county of Essex, New Jersey, to Samuel S. Badgley, another child of Henry, and among the tracts conveyed is the sixth described as follows: "Being a

piece of salt meadow adjoining Jacob F. Badgley and others."
It is stated in the deed

"all of which tracts of land are the same owned by Henry Badgley, late
of Springfield, and of which he died seized, and it is the intention hereby
to convey all right, title and interest of the said Jeremiah and Lavinia.
his wife, of, in and to the estate, lands, etc., whereof the said Henry
Badgley died seized wheresoever the same may be as heirs at law of the
said Henry Badgley, deceased."

There never was any salt meadow in the township of Spring-
field, and the lands referred to in the last deed must have been
the salt meadow near Elizabeth Town referred to in the will of
Samuel Badgley and by him devised to his sons, Jacob and
Henry, in equal parts. Nothing further of record, directly
affecting the lands in question, appears until deeds obtained by
complainant, from various of the heirs-at-law of Jacob and
Henry, during the last few years, were recorded on October 30th,
1918. No conveyance, grant or devise of any description into
Samuel Badgley is shown. On September 28th, 1825, one Clark
conveyed to one Martin a tract of land adjoining the lands
sought to be partitioned and in the description of this adjoining
tract is contained the following: "Thence along his line and
Samuel Badgley's to the east, etc.," and the following:
"Bounded  *  *  *  easterly by the meadows of William
Dayton and Samuel Badgley's." By deed dated December 4th,
1816, one Dayton conveyed to one Byrant lands adjoining in
which conveyance the lands in question are referred to as those
of William Price. By deed dated May 19th, 1854, one Norris,
executor, conveyed to one Wade lands adjoining in which the
lands in question are referred to as follows: "Thence (3) south
*  *  *  to a stake standing as a corner of John Henderson's
meadow." The testimony is to the effect that there are no con-
veyances or devises affecting the lands in question out of or into
either Price or Henderson. Elizabeth Rabig, fifty-two years of
age, a daughter of Phebe Dillon, who was a daughter of Henry
Badgley, testified that she had often heard her mother speak
of the six-acre tract of meadow land in the Elizabeth meadows
of which her grandfather, Samuel Badgley, died seized. Joseph
Brant, seventy-six years of age, the husband of one of the

children of Mary Welshman, who was a daughter of Henry Badgley, testified that he had always known about the interest his wife had in the six-acre tract of salt meadow in the Elizabeth Town great meadows of which her great grandfather, Samuel Badgley, died seized.

Complainant Grassman, who is a civil engineer and surveyor, testified that he had examined the records and that he knew that the sixth described tract in the deed of 1845 was called the Badgley meadow, and that it is known that this meadow was cut by the Badgleys about forty years ago, and that one of the oldest members of the family definitely located the tract which that family owned as being the tract under partition.

At the time the bill was filed the lands were unoccupied and had been for many years. The only evidence of any act of possession was the testimony of Grassman that it was generally known that the Badgley family cut the land for salt hay about forty years ago. The lands are incapable of continuous physical occupation in their present condition. The only act of ownership that complainant has performed has been to go over the land in a general way. They have not been fenced or posted. There is nothing to prevent complainant from entering upon the lands, so far as they may be entered upon, and from fencing or posting them. There is no one in possession and no one so far as known asserting an adverse title.

The master based his determination upon section 1 of an act concerning partition (*Comp. Stat. p. 3897*), holding, in effect, that before there can be partition in this court complainant must prove his title. But the power of this court to decree partition is not limited by the statute. Section 44 of the act (*Comp. Stat. p. 3910*) provides that the court of chancery shall have power upon bill filed in that court for the partition of real estate, to decree the sale thereof, and the jurisdiction of said court shall continue as heretofore, anything in this act to the contrary notwithstanding. The jurisdiction of a court of equity to decree partition is not based upon statute. *17 Am. & Eng. Encycl. L. (1st ed.) 677, 679; 1 Story Eq. Jur. (11th ed.) 683, &c., §§ 646, &c.; Hay v. Estell, 18 N. J. Eq. 251.* The statutory method does not deprive courts of equity of their inherent

power.  *Gutheridge* v. *Gutheridge* (*Court of Appeals of Texas*), *161 S. W. Rep. 692.*

The rule has been generally expressed that even in case of a default the court, before decreeing partition, will require evidence which would *prima facie* entitle the party to a verdict in ejectment.  *17 Am. & Eng. Encycl. L.* (*1st ed.*) *745 subd. c; 30 Cyc. tit. "Partition" 246 subd. B note 89.*  It will be observed, however, that the cases cited in support of the general proposition are cases from New York, and that these cases are based upon a construction of their statute.  It is uniformly held in ejectment that a *prima facie* title is, at least, established by proof of a deed or deeds to one's self and possession in one's self or the grantor or devisor, or of his predecessor in title.  *9 Rul. Cas. L. tit. "Ejectment" 843 § 15.*.  See also note to *Cottrell* v. *Pickering, 10 L. R. A.* (*N. S.*) *404*, and note to *Dodge* v. *Irvington Land Co., 22 L. R. A.* (*N. S.*) *1100.*  Complainant, unquestionably, has color of title.  *Sedgw. & Wait Tr. Tit. Land* (*2d ed.*) *§ 762.*

Partition, generally speaking, may be had in equity of any class of property or of any rights held in co-tenancy.  *30 Cyc. tit. "Partition" 153.*

Where lands sought to be partitioned are vacant, actual possession is not necessary if the applicant is the holder of the legal title.  *21 Am. & Eng. Encycl. L.* (*2d ed.*) *1149 subtit. "Vacant Lands."*

The reason for the rule requiring that an applicant for partition must show title, so far as courts of equity are concerned, is that the court will not make a futile decree, nor will it assist in embarrassing titles.  A decree in partition does not settle the title nor does it bind others than those parties to the litigation or those holding under them or whom they represent in some manner.  *30 Rul. Cas. L. tit. "Partition" 787 § 58.*

There is nothing to prevent complainant's immediate entry upon the lands so far as they may be entered upon.  Under the circumstances, I think, he is entitled to partition in this court.

The master also reports that the description is too indefinite.  It is generally held that the description must be sufficiently particular to actually identify the property upon which the decree

is intended to operate. *17 Am. & Eng. Encycl. L.* (*1st ed.*) *733; 30 Cyc. tit. "Partition" 218 subd. 10.* The description is indefinite. Counsel for exceptant agrees to have a survey and procure a more accurate description.

The matter will be re-referred to the special master so that he may take such additional evidence as may be offered before him with respect to the description of the property and with respect to what steps complainant may take to actually take possession of the land, and he is then to report the rights and interests of the respective parties as he was directed to by the prior order of reference. His report is to be in line with this opinion.

Unless the rights held by the parties to this litigation are partitionable in equity, it would appear that the parties are remediless. They cannot maintain ejectment or trespass. It is difficult to conceive how a suit to quiet title, in the present state of the law, at least, can be maintained. Whatever difficulty the purchaser at the sale may have with respect to his title is a matter with which this court has no concern at this time. I am quite convinced that the rights of the parties may be partitioned in equity.